## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 27 2016, 8:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Joseph Kriete, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 27, 2016 <br><br> Court of Appeals Case No. <br> 48A04-1508-CR-1152 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman Jr., Judge <br><br> Trial Court Cause No. <br> 48C03-1411-F4-2003 |

**Mathias, Judge.**

[1]     Daniel Joseph Kriete ("Kriete") was convicted in Madison Circuit Court of three counts of Level 4 felony burglary and five counts of Class A misdemeanor

theft. He was ordered to serve thirty-six years in the Department of Correction. Kriete appeals and argues that the trial court erred in denying his pre-trial motion for severance of the charges.

We affirm.

**Facts and Procedural History**

In October 2014, Marianne Abney ("Abney") left her residence in Madison County, Indiana for a vacation.[1] When she returned on October 15, 2014, Abney noticed that the door between her garage and utility room was broken. After looking around inside, Abney noted that "all of [her] jewelry had been taken." Tr. p. 351. She reported the incident to the police.

Sixteen days later, Robin Pickett ("Pickett") returned home from work with her daughter on October 31, 2014 around 4:00 p.m. and noticed that her back door was "wide open." Tr. p. 454. After entering her home, Pickett discovered that her television, three laptops, and a couple of HDMI cables were missing. Pickett immediately called the police to report the incident.

Six days after Pickett's discovery, on November 6, 2014, Kay Krall ("Krall") was on vacation with her husband. That same day, Krall's neighbor, James Davis ("Davis") was outside checking his mail and noticed a suspicious vehicle parked in Krall's driveway. Davis approached the car and asked the two men

---

[1] All subsequent incidents occurred in Madison County, Indiana.

inside who they were and why they were there. The driver told Davis that they were there to do work for Tim Johnson. Davis responded by telling the men that no one named Tim Johnson lived in the neighborhood and again inquired why the men were in Krall's driveway. Without answering Davis's question, the men sped away, nearly running over Davis's toes. Davis was able to write down the license plate number and called Krall to let her know what had occurred.

[6] Krall then contacted her son-in-law, Peter Hopkins ("Hopkins"), and asked him to go to her house to look around. Hopkins observed that the back door was half opened and "just kind of swinging." Tr. p. 289. Hopkins told Davis that someone had broken into the house, and Davis called the police. Meanwhile, next-door neighbor Penny Wilson ("Wilson") watched a man run through her backyard carrying a bag. Wilson then saw the man jump into the backseat of a car that sped away. Officers secured the home because the Kralls were still on vacation, but after Krall returned, she reported that jewelry and a coin collection were missing.

[7] Later that same day, Beth Manis ("Manis") returned home from work to find her back door kicked in and CDs and DVDs scattered all over the living room floor. Manis later discovered that CDs, DVDs, several pieces of jewelry, an iPad, a game system, and some games were missing. She notified the police of the incident.

[8] Five days later, on November 11, 2014, Timothy Lee, DVM ("Dr. Lee") returned home from work around 4:00 p.m. to let his dog outside and was surprised to find that his front door was unlocked.[2] After Dr. Lee went inside the house, he found that his bedroom had been ransacked and discovered that several pieces of jewelry, a watch, his wallet, and numerous personal items were missing.

[9] The Anderson Police Department assigned Detective Trent Chamberlain ("Detective Chamberlain")[3] to investigate all of these Fall, 2014 burglaries. The first report he received was from the November 6, 2014 incident at Krall's home. He then compiled a list of other burglaries in the area to characterize the method of entry, method of operation, and types of items taken. Detective Chamberlain discovered that there were five burglaries in the Anderson, Indiana area that were recent, involved stolen jewelry and electronics, and involved a door being forced or pried open.

[10] Based on the description of the vehicle and the license plate number provided to police by Davis, Detective Chamberlain discovered that the car was registered to the father of Michael Showecker ("Showecker"). Officers on the Madison County Drug Task Force were familiar with Showecker and identified him as a heroin addict who had been seen driving around a vehicle matching the

---

[2] Dr. Lee stated that his wife left the back door unlocked, so he believed that the intruder entered through the back door and left through the front door.

[3] The charging information refers to Detective Chamberlain as "Trent Chamberlin."

description of the vehicle that Davis saw at Krall's residence. Detective Chamberlain received further information that the same vehicle was parked behind a local motel and that Showecker was with another man named Michael Taylor ("Taylor"). After receiving this tip, Detective Chamberlain verified that the plate number matched the one from the report and checked with the front desk attendant to determine if a room was registered in either one of their names. He discovered that a room was registered to Michael Taylor.

[11] Detective Chamberlain and Officer William Richardson ("Officer Richardson") then knocked on the door of Taylor's room and found Showecker and Taylor inside along with several pieces of Krall's jewelry. After searching the car parked outside, the officers also found more jewelry that belonged to Krall, as well as Manis's iPad. Showecker and Taylor were then arrested.

[12] Showecker and Taylor cooperated with the police and indicated that they were helping appellant Kriete burglarize homes in the area. They told police that they would sit in the car while Kriete would break in and steal valuables. They also admitted that they were at Krall's residence on November 6, 2014 to help Kriete, that they drove off after they were questioned by Davis, and that they picked up Kriete "down the road." Tr. p. 498. Further, Taylor admitted to pawning several items at a cash for gold shop. The three men split the proceeds, but Kriete took the largest percentage of profit.

[13] The police later discovered that Kriete was staying at an abandoned house and renting a storage unit in Madison County. While executing a search warrant,

officers located several stolen pieces of jewelry in the house and items belonging to Abney, Manis, and Dr. Lee in the storage unit. When Kriete was arrested, he was wearing Dr. Lee's watch and carrying his missing wallet.

[14] The State charged Kriete with Level 4 felony burglary and Class A misdemeanor theft on November 14, 2014. On March 31, 2015, the State amended the charging information to add an additional four counts of Level 4 felony burglary and four counts of Class A misdemeanor theft. Kriete filed a motion for severance of the charges on May 16, 2015.[4]

[15] A jury trial was held on June 16-18, 2015. The jury convicted Kriete on all counts except for Level 4 felony burglary of Abney's home and Level 4 felony burglary of Dr. Lee's home. This amounted to three Level 4 felony burglary and five Class A misdemeanor theft convictions. A sentencing hearing was held on July 13, 2015. The trial court ordered Kriete to serve twelve years for each Level 4 felony burglary conviction consecutive and one year for the five Class A misdemeanor convictions concurrent in the Department of Correction. His total sentence was thirty-six years. Kriete now appeals.

---

[4] However, the trial court did not issue an order related to Kriete's motion for severance, so it was presumed denied as the trial continued with all offenses.

## Discussion and Decision

[16] Kriete argues that the trial court erred in denying his pre-trial motion for severance of charges. He specifically asserts that he was entitled to severance as a matter of right under Indiana Code section 35-34-1-11(a), which provides:

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[17] Although Indiana Code section 35-34-1-22(a) provides severance as a matter of right in limited circumstances, Indiana Code section 35-34-1-12(b) states:

> If a defendant's pretrial motion for severance of offenses or motion for a separate trial is overruled, the motion may be renewed on the same ground before or at the close of all the evidence during trial. The right to severance of offenses or separate trial is waived by failure to renew the motion.

[18] Here, the trial court denied Kriete's pre-trial motion for severance. At the close of the evidence, Kriete failed to renew the motion for severance. As a result, his right to severance of offenses was waived by failure to renew.

[19]     Waiver notwithstanding, we will address Kriete's alternative argument that the trial court erred in denying his motion, on discretionary severance grounds. If severance is not a matter of right, Indiana Code section 35-34-1-11(a) provides in relevant part:

> the court, upon motion of the defendant or prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering: (1) the number of offenses charged; (2) the complexity of the evidence to be offered; and (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

We review the trial court's refusal to sever charges under these circumstances for an abuse of discretion. *Bowser v. State*, 984 N.E.2d 236, 239 (Ind. Ct. App. 2013).

[20]     Here, Kriete was charged with five counts of burglary and five counts of theft. The State presented evidence for each burglary and theft charge through witness testimony and photographs of stolen items that were recovered by the police in various locations that implicated Kriete. None of the evidence was particularly complex. Further, the court clearly identified each offense and named each victim in the jury instructions. The jury then convicted Kriete on three counts of burglary and five counts of theft but acquitted him on two counts of burglary. This result demonstrates that the jury was able to distinguish the evidence related to each charge and apply the law intelligently to each offense.

Accordingly, we cannot say that the trial court abused its discretion in denying Kriete's pre-trial motion for discretionary severance.

[21] For all of these reasons, we conclude that by failing to renew his motion for severance before or at the close of evidence, Kriete waived the issue presented in this appeal. Waiver notwithstanding, we conclude that the trial court did not abuse its discretion in denying Kriete's pre-trial motion, on discretionary severance grounds, either.

[22] Affirmed.

Vaidik, C.J., and Barnes, J., concur.